# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| HAROLD DEWHURST and DAVID BRYAN, on behalf of themselves and all other persons similarly situated, and UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO/CLC, | ) ) ) ) ) ) ) ) ) | Case No. 2:09-cv-1033 Judge John D. Holschuh Mag. Judge Mark R. Abel |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| CENTURY ALUMINUM COMPANY, CENTURY ALUMINUM OF WEST VIRGINIA, INC., CENTURY ALUMINUM MASTER WELFARE BENEFIT PLAN, and DOES 1 THROUGH 20, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS OR TRANSFER THESE PROCEEDINGS TO THE SOUTHERN DISTRICT OF WEST VIRGINIA

E. Michael Rossman  (OH 0070168)
Trial Attorney
JONES DAY
Street Address:
  325 John H. McConnell Boulevard,
  Suite 600
  Columbus, OH  43215-2673
Mailing Address:
  P.O. Box 165017
  Columbus, OH  43216-5017
Telephone:  (614) 469-3939
Facsimile:  (614) 461-4198

Stanley Weiner (admission *pro hac vice* forthcoming)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH  44114-1190
Telephone:  (216) 586-7763
Facsimile:  (216) 579-0212

Sarah McClure (admission *pro hac vice* forthcoming)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C.  20001-2113
Telephone:  (202) 879-3811
Facsimile:  (202) 626-1700

Counsel for Defendants

# TABLE OF CONTENTS

Page

INTRODUCTION AND SUMMARY OF ARGUMENT ............................................. 1

STATEMENT OF FACTS ......................................................................................... 5

I.      BACKGROUND .......................................................................................... 5

II.     RETIREE MEDICAL BENEFITS ............................................................... 6

III.    THE CAWV SUIT ........................................................................................ 8

IV.     THE USW SUIT............................................................................................ 9

V.      LOCATION AND ACCESSIBILITY OF AVAILABLE EVIDENCE............. 10

ARGUMENT........................................................................................................... 13

I.      UNDER THE FIRST-TO-FILE RULE, THIS COURT SHOULD
        DISMISS OR TRANSFER the USW'S SUIT SO THAT CAWV'S SUIT
        MAY PROCEED TO JUDGMENT .................................................................. 14

        A.      Under the First-to-File Rule, CAWV'S Suit Is the One that Should
                Proceed to Judgment................................................................................ 14

                        Chronology of the Actions........................................................... 15

                        Similarity of the Parties ............................................................... 15

                        Similarity of the Issues ................................................................ 17

        B.      USW Cannot Prove Any Rare Or Extraordinary Circumstances
                Justifying Dispensing With The First-To-File Rule ................................ 18

II.     THE COURT SHOULD TRANSFER VENUE TO THE SOUTHERN
        DISTRICT OF WEST VIRGINIA UNDER 28 U.S.C. § 1404(a) ...................... 22

        A.      The Southern District of West Virginia, Charleston Division Is A
                Proper Venue For This Action.................................................................. 23

        B.      The Southern District of West Virginia, Charleston Division Is The
                Most Convenient and Just Forum ............................................................ 24

                1.      The Southern District of West Virginia, Charleston
                        Division Is The Most Convenient Forum For The Parties .......... 26

                2.      The Southern District of West Virginia, Charleston
                        Division Is Also The Most Convenient Forum For The
                        Witnesses ..................................................................................... 28

                3.      The Relevant Documents And Other Sources Of Proof Are
                        Located In The Southern District Of West Virginia,
                        Charleston Division ..................................................................... 32

                4.      The Interests Of Justice Favor Transfer To The Southern
                        District Of West Virginia, Charleston Division .......................... 33

                5.      Plaintiffs' Choice Of Forum Is Not Entitled To Deference......... 34

# TABLE OF CONTENTS

**Page**

CONCLUSION.................................................................................................................. 36

# TABLE OF AUTHORITIES

**Page**

CASES

*Abbott Labs., Inc. v. Mead Johnson & Co.,*
No. C2-98-0157, 1998 U.S. Dist. LEXIS 12317 (S.D. Ohio Apr. 21, 1998) ........ 15-18, 20, 22

*AluChem, Inc. v. Sherwin Alumina L.P.,*
No. C-1-06-263, 2006 WL 1281887 (S.D. Ohio May 10, 2006) ..................................... 14, 21

*Am. Modern Home Ins. v. Insured Accounts Co.,*
704 F. Supp. 128 (S.D. Ohio 1988) ..................................................................................... 15

*Am. Radiator & Standard Sanitary Corp. v. Local 7 of Int'l Bhd. of Operative*
*Potters,*
358 F.2d 455 (6th Cir. 1966) ............................................................................................... 19

*AmerisourceBergen Drug Corp. v. Meijer, Inc.,*
No. 2:05-CV-0199, 2005 WL 1630843 (S.D. Ohio July 8, 2005) .............................. 22, 23, 25

*AmSouth Bank v. Dale,*
386 F.3d 763 (6th Cir. 2004) ............................................................................................... 20

*Baltimore v. Toyota Motor Credit Corp.,*
No. 00 CV 8415, 2001 WL 637377 (S.D.N.Y. June 8, 2001) ............................................... 32

*Barber-Greene Co. v. Blaw-Knox Co.,*
239 F.2d 774 (6th Cir. 1957) ............................................................................................... 21

*Bordiga v. Dirs. Guild,*
159 F.R.D. 457 (S.D.N.Y. 1995) .............................................................................. 4, 23, 34

*BSI Indus., Inc. v. Q.B. Johnson Mfg., Inc.,*
No. C2-08-276, 2009 WL 349143 (S.D. Ohio Feb. 6, 2009) ......................................... 3, 14, 18

*Burns, Morris & Stewart Ltd. P'ship. v. Menard, Inc.,*
No. 3:05CV7112, 2006 WL 456497 (N.D. Ohio Feb. 23, 2006) .............................. 25, 33, 34

*Cardarelli v. Curb Records, Inc.,*
No. 5:05CV2690, 2006 WL 782702 (N.D. Ohio Mar. 27, 2006) ..................................... 31, 32

*Central States, S.E. & S.W. Areas Health & Welfare Fund v. Guar. Trust Life Ins.*
*Co.,* 8 F. Supp. 2d 1008 (N.D. Ohio 1998) ...................................... 23, 25, 33, 34, 36

*Cescato v. Anthem, Inc.,*
No. 1:05CV2004, 2005 WL 3487974 (N.D. Ohio Dec. 21, 2005) .............................. 28, 34, 36

**Page**

*Checuti v. Conrail*,
   291 F. Supp. 2d 664 (N.D. Ohio 2003) ...............................................................25

*City of Columbus v. Hotels.com, L.P.*,
   No. 2:06-cv-677, 2007 WL 2029036 (S.D. Ohio July 10, 2007) ......................35, 36

*DeMoss v. First Artists Prod. Co.*,
   571 F. Supp. 409 (N.D. Ohio 1983) .....................................................................4

*Fed. Trade Comm'n. v. Mazzoni & Son, Inc.*,
   No. 106-CV-2385, 2006 WL 3716808 (N.D. Ohio Dec. 14, 2006) .......................28

*FMP Resistance Welding Supply, Inc. v. Cobasys, LLC*,
   No. C-1-05-275, 2006 WL 1209383 (S.D. Ohio May 2, 2006) ......................21, 22

*Fox v. Massey-Ferguson, Inc.*,
   No. 93-CV-74615, 1995 WL 307485 (E.D. Mich. Mar. 14, 1994) ...............4, 28, 31

*H & S Tool, Inc. v. Austerman*,
   No. C-3-07-331, 2008 WL 420036 (S.D. Ohio Feb. 14, 2008) ..................16, 17, 20

*Harris v. Republic Airlines*,
   699 F. Supp. 961 (D.D.C. 1988) ...........................................................................32

*Healthcare Capital, LLC v. Healthmed, Inc.*,
   213 F. Supp. 2d 850 (S.D. Ohio 2002) ..................................................................15

*International Shoe Co. v. Washington*,
   326 U.S. 310 (1945).............................................................................................23

*Internet Transactions Solutions, Inc. v. Intel Corp.*,
   No. 2:06-CV-035, 2006 WL 1281654 (S.D. Ohio May 8, 2006) ...........................18

*Jones v. Walgreen Co.*,
   463 F. Supp. 2d 267 (D. Conn. 2006)...............................................................25, 26

*Kay v. Nat'l City Mortg. Co.*,
   494 F. Supp. 2d 845 (S.D. Ohio 2004) ..........................................................25, 33, 34

*Laborers Local 100 & 397 Pension Fund v. Bausch & Lomb Inc.*,
   No. 06 Civ. 19422006 WL 1524590 (S.D.N.Y. June 5, 2006)...................,26, 27, 34

*Martin v. Caterpillar, Inc.*,
   No. 06-4208, 2006 WL 3923900 (W.D. Mo. Dec. 15, 2006).................................34

# TABLE OF AUTHORITIES

*Mead Corp. v. Stuart Hall Co.*,
    679 F. Supp. 1446 (S.D. Ohio 1987) .................................................................................22

*Midwest Motor Supply Co. v. Kimball*,
    761 F. Supp. 1316 (S.D. Ohio 1991) ...............................................................4, 26, 28, 34

*Moore v. Rohm & Haas Co.*,
    446 F.3d 643 (6th Cir. 2006) .....................................................................................23, 24

*N. Am. Demolition Co. v. FMC Corp.*,
    No. 5:05CV0104, 2005 WL 1126747 (N.D. Ohio Apr. 28, 2005) ...................................31

*NCR Corp. v. First Fin. Computer Servs. Inc.*,
    492 F. Supp. 2d 864 (S.D. Ohio 2007) .................................................................15, 18, 21

*Neff Athletic Lettering Co. v. Walters*,
    524 F. Supp. 268 (S.D. Ohio 1981) ..............................................................25, 32, 33, 34

*Plantronics, Inc. v. Clarity, LLC*,
    No. 1:02-CV-126, 2002 WL 32059746 (E.D. Tenn. July 17, 2002) .................................22

*Plaskolite, Inc. v. Zhejiang Taizhou Eagle Mach. Co.*,
    No. 08-487, 2008 WL 5190049 (S.D. Ohio Dec. 9, 2008) .........................................4, 28

*Plating Res. Inc. v. UTI Corp.*,
    47 F. Supp. 2d 899 (N.D. Ohio 1999) ......................................................................15, 22

*Principal Mfg. Corp. v. Espey & Assocs., Inc.*,
    No. 1:08cv393, 2009 WL 483801 (S.D. Ohio Feb. 25, 2009) ........................................19

*Ret. Plan of Unite Here Nat'l Ret. Fund v. Village Resorts, Inc.*,
    No. 08 Civ 4249, 2009 WL 255860 (S.D.N.Y. Feb. 3, 2009) ....................................34, 35

*Rexam, Inc. v. United Steelworkers of Am.*,
    No. Civ. 03-2998, 2003 WL 22477858 (D. Minn. Oct. 30, 2003) ..................................19

*Silver Knight Sales & Mktg., Ltd. v. Globex Int'l Inc.*,
    No. 2:06-cv-123, 2006 WL 3230770 (S.D. Ohio Nov. 6, 2006) .........................3, 15, 16, 35

*Sky Tech. Partners, LLC v. Midwest Research Inst.*,
    125 F. Supp. 2d 286 (S.D. Ohio 2000) ......................................................25, 33, 34

*Stewart Org., Inc. v. Ricoh Corp.*,
    487 U.S. 22 (1988)...........................................................................................................25

# TABLE OF AUTHORITIES

**Page**

*Strategic Ambulance, Inc. v. Martinez,*
   No. 1:05-cv-598, 2006 WL 462430 (S.D. Ohio Feb. 24, 2006) ........................................15, 18

*Textron Lycoming Reciprocating Engine Div., Avco Corp. v. UAW,*
   523 U.S. 653 (1998) ........................................................................................................19

*UAW v. Dana Corp.,*
   No. 3:99cv7603, 1999 WL 33237054 (N.D. Ohio Dec. 6, 1999) ...........................................20

*Yolton v. El Paso Tenn. Pipeline Co.,*
   435 F.3d 571 (6th Cir.), *cert. denied,* 549 U.S. 1019 (2006)........................................29

*Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Assocs., Inc.,*
   16 F. App'x 433 (6th Cir. 2001) ..........................................................................3, 18

*Zimmer Enters. v. Atlandia Imps., Inc.,*
   478 F. Supp. 2d 983 (S.D. Ohio 2007) ........................................................19, 25, 28

## STATUTES

29 U.S.C. § 185(a) ...........................................................................................................1, 23, 24

29 U.S.C. § 1102(b)(3) ....................................................................................................1, 9

29 U.S.C. § 1104(a)(1)(d)................................................................................................1, 9

29 U.S.C. § 1132(e)(2) ....................................................................................................24

28 U.S.C. § 1404(a) ............................................................................4, 14, 22, 23, 28, 36

## OTHER AUTHORITIES

Fed. R. Civ. P. 20 .............................................................................................................17

Fed. R. Civ. P. 19 .............................................................................................................17

## INTRODUCTION AND SUMMARY OF ARGUMENT

On October 19, 2009, Century Aluminum of West Virginia, Inc. (hereinafter "CAWV"), after curtailing operations at its Ravenswood, West Virginia plant due to its critical financial situation, and in addition to taking multiple other cost saving measures, announced plans, effective January 1, 2010, to make changes to medical benefits it provides to certain retirees of the Ravenswood plant who, when employed, were represented by the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO/CLC (hereinafter "USW") and its Local No. 5668 (hereinafter "Local 5668") (collectively, "the Union") in Ravenswood, West Virginia. Soon after the announcement, the Union made clear that it disputed CAWV's right to implement the modifications and that it planned to fight the proposed changes through legal action.

On November 2, 2009, CAWV filed a class action complaint for declaratory judgment (hereinafter "the CAWV suit") seeking a judicial declaration under both the Labor Management Relations Act, 29 U.S.C. § 185(a) ("LMRA"), and the Employee Retirement Income Security Act, 29 U.S.C. §§ 1104(a)(1)(d) and 1102(b)(3) ("ERISA"), that its announced changes to retiree medical benefits do not violate the terms of the parties' collective bargaining agreements and/or plan documents.[1] CAWV filed its Complaint in the *only* logical venue for this dispute – the Southern District of West Virginia – where the Ravenswood plant, the only plant affected by the benefit changes, is located, where the benefits at issue were negotiated over all of the relevant years, and

---

[1] CAWV filed its Complaint against the USW, Local No. 5668, and retirees Lloyd Conner, James King, Michael Barker, and John Ashby (hereinafter "CAWV Individual Defendants"), individually and as representatives of a proposed class of over 400 retirees, spouses, surviving spouses, and dependents of retirees who were represented, when employed, by the Union and who are affected by the announced benefit modifications.

where over 80% of the retirees, and the vast majority of the witnesses and relevant documents are located.

Without responding to the CAWV suit pending in the Southern District of West Virginia, on November 13, 2009, the USW and individual retirees Harold Dewhurst and David Bryan (hereinafter "USW Individual Plaintiffs") filed their own class action Complaint against Defendants in this Court (hereinafter "USW suit").[2] Their filing is a transparent attempt at forum-shopping in an effort to take advantage of the perceived more favorable law in the Sixth Circuit given the *de minimis* connection that this dispute has to the Southern District of Ohio. Specifically,

- The benefit changes announced by CAWV only apply to the Ravenswood, West Virginia plant, its retirees and their spouses, surviving spouses, and dependents;

- Of the approximately 450 individuals affected by CAWV's announced benefit changes, approximately 365, or 81.1%, reside in West Virginia, whereas approximately 75, or 16.7%, reside in Ohio;

- Of those 16.7% of the affected individuals who live in Ohio, approximately 93%, including the two named plaintiffs in the USW suit, reside *closer* to the federal courthouse in Charleston, West Virginia than the federal courthouse in Columbus, Ohio;

- Plaintiff USW maintains its headquarters in Pittsburgh, Pennsylvania, and its Local No. 5668 is headquartered in Ravenswood, West Virginia;

- Neither Defendant CAWV, nor its parent company, Defendant Century Aluminum Company (hereinafter "CAC"), own or operate any plant or facility in the State of Ohio;

- The benefits at issue in this litigation are CAWV plans negotiated at, unique to, and historically administered on a day-to-day basis by Human Resources employees in Ravenswood, West Virginia;

---

[2] Much like the CAWV suit, the USW suit contains two counts, one arising under LMRA and the other under ERISA, alleging that CAWV's announced changes to retiree medical benefits violates those statutes. (Compl. ¶¶ 32-37 (hereinafter "USW Complaint")).

- The historical collective bargaining agreements under which benefits were provided were negotiated by CAWV and/or its predecessors and the USW in the Southern District of West Virginia;

- Both the USW and Plaintiffs' counsel chose Ravenswood, West Virginia as the location for a recent meeting of retirees affected by CAWV's announced modifications;

- The vast majority of key witnesses relevant to this litigation reside in West Virginia; and

- The vast majority of key documents relevant to this litigation are located at the Ravenswood plant in West Virginia.

These compelling facts make clear that this dispute belongs in the Southern District of West Virginia. Accordingly, this Court should either dismiss or, at a minimum, transfer the USW suit for several reasons. First, because CAWV has a first-filed suit regarding the same issues and substantially similar parties pending in a district court of equal rank, the Court should respect the principles of comity and defer to the jurisdiction of the United States District Court for the Southern District of West Virginia, allowing the CAWV suit to proceed to judgment. *See, e.g., Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Assocs., Inc.*, 16 F. App'x 433, 437 (6th Cir. 2001); *BSI Indus., Inc. v. Q.B. Johnson Mfg., Inc.*, No. C2-08-276, 2009 WL 349143, at *2 (S.D. Ohio Feb. 6, 2009); *Silver Knight Sales & Mktg., Ltd. v. Globex Int'l Inc.*, No. 2:06-cv-123, 2006 WL 3230770, at *4 (S.D. Ohio Nov. 6, 2006) (Holschuh, J). In doing so, this Court may either dismiss the instant action in favor of the first-filed suit or transfer the USW suit to the Southern District of West Virginia, Charleston Division.

Second, independent of the comity principles underlying the first-to-file rule, this Court should transfer the USW suit to the appropriate forum, the Southern District of West Virginia, Charleston Division, in the interests of convenience and justice, pursuant

to 28 U.S.C. § 1404(a). *See, e.g., Midwest Motor Supply Co. v. Kimball*, 761 F. Supp. 1316, 1319 (S.D. Ohio 1991) (Holschuh, J.) (considering the "convenience of the parties" and finding that the inconvenience to the defendant caused by litigating in Ohio outweighed any inconvenience to plaintiff arising from the transfer); *Plaskolite, Inc. v. Zhejiang Taizhou Eagle Mach. Co.,* No. 08-487, 2008 WL 5190049, at *8 (S.D. Ohio Dec. 9, 2008) (transferring venue and noting that "most, if not all non-party witnesses" were located in the transferee jurisdiction); *DeMoss v. First Artists Prod. Co.*, 571 F. Supp. 409 (N.D. Ohio 1983) (while plaintiff chose forum in which he resided, transfer of venue granted because none of the behavior at issue in the litigation occurred in Ohio). Courts have reaffirmed this principle in LMRA and ERISA actions. *See, e.g., Bordiga v. Dirs. Guild*, 159 F.R.D. 457, 459, 463 (S.D.N.Y. 1995) (transferring venue in a Section 301 LMRA action related to the adoption of "changes to the [Pension] Plan" based on litigation's center of gravity and convenience to parties and witnesses based on their location); *Fox v. Massey-Ferguson, Inc.*, No. 93-CV-74615, 1995 WL 307485, at *1, *5 (E.D. Mich. Mar. 14, 1994) (transferring venue in ERISA/Section 301 LMRA action related to the imposition of benefit changes based on convenience of the parties and interests of justice).

In short, under any application of either comity or convenience, all roads lead this litigation to where CAWV began it: the Southern District of West Virginia. Accordingly, the Court should apply the comity principles of the first-to-file rule and either dismiss or transfer the USW suit to the Southern District of West Virginia or, for the convenience of the parties, the witnesses, and in the interests of justice, transfer this action to that District under 28 U.S.C. § 1404(a).

## STATEMENT OF FACTS

### I.    BACKGROUND

CAWV owns one plant which is located in Ravenswood, West Virginia (hereinafter "the Ravenswood plant"). The plant is an aluminum smelter and, when operating, produces metal in various forms such as molten and ingot. (Decl. of Timothy McNabb (hereinafter "McNabb Decl.") ¶ 3, attached hereto as Ex. 1.) The plant, prior to being owned by CAWV, was owned by Kaiser Aluminum & Chemical Company until 1989, when the plant was purchased by Ravenswood Aluminum Corporation. (*Id.* ¶ 4.) In 1997, the plant was renamed Century Aluminum of West Virginia, Inc. (*Id.*) CAWV's parent company, Defendant Century Aluminum Company, is headquartered in Monterey, California. (*Id.* ¶ 2.) Neither CAC nor CAWV owns or operates any plant or facility in the State of Ohio. (*Id.*)

Plaintiff USW is a labor union headquartered in Pittsburgh, Pennsylvania. (USW Compl. ¶ 13.) Historically and currently, the USW has been the collective bargaining representative of certain CAWV employees at the Ravenswood, West Virginia plant. (*Id.* ¶ 13.) The USW's representative assigned to the Ravenswood plant, Randall T. Moore, Staff Representative, District 8, maintains his office in Mineral Wells, West Virginia. (McNabb Decl. ¶ 7.) Local 5668 is located in Ravenswood, West Virginia. (*Id.*)

Messrs. Harold Dewhurst and David Bryan, the USW Individual Plaintiffs and putative class representatives in the USW suit, are former CAWV employees who worked at the Ravenswood plant. (USW Compl. ¶¶ 11-12.) Plaintiff Dewhurst retired in 1995 and currently resides in Rutland, Ohio. (*Id.* ¶ 11.) Plaintiff Bryan retired in 1994 and currently resides in Gallipolis, Ohio. (*Id.* ¶ 12.)

## II.   RETIREE MEDICAL BENEFITS

CAWV currently provides retiree medical benefits to approximately 450 retirees, spouses, surviving spouses, and dependents of retirees who were represented, when employed, by the Union and who retired after February 6, 1989 and before June 1, 2006 (hereinafter "CAWV Retirees"). Of the approximately 450 CAWV Retirees affected by the announced changes to retiree medical benefits, the vast majority, approximately 365 (or 81.1%), live in West Virginia. (Decl. of Amy L. Zywicki (hereinafter "Zywicki Decl.") ¶ 4, attached hereto as Ex. 2.) By comparison, only approximately 75 (or 16.7%) live in Ohio. (*Id.*)

Over the years, CAWV has provided retiree medical benefits to the CAWV Retirees pursuant to collective bargaining agreements (hereinafter "CBAs") and medical benefit plans that were negotiated by CAWV and the Union in the Southern District of West Virginia, were unique to the Ravenswood plant, and were historically administered on a day-to-day basis by Human Resources personnel working at the Ravenswood plant. (Jessica Baker Decl. ("Baker Decl.") ¶ 4, attached hereto as Ex. 3; McNabb Decl. ¶¶ 8, 9.) These collective bargaining agreements and plan documents (*i.e.*, summary plan descriptions and summaries) are maintained at the Ravenswood plant. (McNabb Decl. ¶ 9.) Recently, in order to streamline its governmental filing requirements, CAWV's parent, CAC, developed a Century Aluminum Master Welfare Benefit Plant (hereinafter the "Wrap Plan"), which is a wrap-around plan that incorporates as Exhibits each of its subsidiaries' plant-specific benefit plans. (*See* Baker Decl. ¶ 3.) As the Wrap Plan makes clear, the benefits for the CAWV Retirees are currently provided by CAWV pursuant to benefit plan documents negotiated between CAWV and/or its predecessors and the Union that are unique to the Ravenswood plant. (Baker Decl. ¶ 4.)

In recent years, as economic conditions deteriorated, including increased volatility in production costs and a decline in aluminum prices, CAWV faced increasingly difficult financial circumstances. This eventually resulted in a decision to curtail production operations at the Ravenswood plant and indefinitely lay off substantially all of its employees. (McNabb Decl. ¶¶ 10-11.) In addition to curtailing operations, CAWV instituted other cost cutting measures in an effort to leave open the option to resume production should the economic conditions sufficiently improve. (*See id.*) These changes included the decision to modify and/or terminate retiree health benefits, indefinitely laying off or terminating salaried employees including management personnel, initiating similar benefits modifications for salaried retirees, modifying medical benefits for the few remaining active salaried employees, and approaching the Union with other proposals for reduction of curtailment costs owed to laid off employees. (*Id.* ¶ 11.)

On October 19, 2009, CAWV sent letters to CAWV Retirees announcing its intent to change and/or terminate the benefits provided to CAWV Retirees, effective January 1, 2010, and providing a description of the changes. (*Id.*) For Pre-65 retirees, the announced modifications included, *inter alia*, premium increases, the addition of deductibles, increases in co-pays, and the introduction of a PPO and in-network system. (*Id.*) For Post-65 retirees, who have access to medical benefits through Medicare, the announced modifications included a termination of supplemental benefits provided by CAWV. (*Id.*)

Subsequently, on October 22, 2009, Local 5668 Grievance Chairman Eli Morris informed the Ravenswood plant Human Resources Manager, Tim McNabb, that "the

Union is in disagreement with the company doing away with, or making any changes to retiree health care benefits and will fight it with all legal means at our disposal." (*Id.* ¶ 13; Ex. A.) Moreover, on October 26, 2009, in a meeting between CAWV and the Union during which the announced changes were discussed, the Union again indicated its belief that CAWV had no legal right to make the announced changes and stated that it would oppose the changes in a legal forum. (*Id.* ¶ 14.)

## III. THE CAWV SUIT

On November 2, 2009, CAWV filed a class action complaint for declaratory judgment in the Southern District of West Virginia, where the Ravenswood plant and the vast majority of CAWV Retirees are located, seeking a judicial declaration so that "CAWV may determine its right to modify and/or terminate the CAWV Retirees' medical benefits." (Compl. of CAWV filed in S.D. W. Va. Case No. 2:09-1193, ¶¶ 35, 39, attached hereto as Ex. 4 (hereinafter "CAWV Compl.")) CAWV brought the suit against the USW, its Local 5668, and four CAWV Retirees, individually and as representatives of the defendant class of CAWV Retirees. (*Id.* ¶¶ 3-8.) The four named individuals are all retirees of the Ravenswood plant living in West Virginia who were represented by the Union during their employment at CAWV and, under CAWV's proposed modifications, would either have their benefits modified or their supplemental insurance terminated. (*Id.* ¶¶ 5-8, 13, 24.)

The Complaint recited the facts giving rise to the litigation, identified the relevant collective bargaining agreements between the Union and CAWV or its predecessors, and alleged that neither the contracts nor the plan documents contained language providing vested retiree health benefits or language restricting CAWV's rights to amend, modify, and/or discontinue the benefits. (*Id.* ¶¶ 14-21.) The Complaint included two counts, one

seeking declaratory judgment as to CAWV's rights under LMRA, (*id.* ¶¶ 33-35), and another seeking declaratory judgment as to CAWV's rights under various provisions of ERISA, specifically 29 U.S.C. §§ 1104(a)(1)(d) and 1102(b)(3). (*Id.* ¶¶ 36-39). With the exception of Mr. Barker, all defendants were served on November 2, 2009.[3] (CAWV Docket Entries Nos. 6-10).

## IV. THE USW SUIT

Without responding in any way to the CAWV suit, the USW filed the instant suit in the Southern District of Ohio, where neither CAWV nor CAC has any operations, and where only a handful of the affected retirees live. (*See* Zywicki Decl. ¶ 4). Remarkably, even the two named retiree plaintiffs live closer to the Charleston, West Virginia federal courthouse than the Columbus, Ohio federal courthouse. Named Plaintiff Dewhurst, who retired in 1995 and resides in Rutland, Ohio (USW Compl. ¶ 11), lives approximately 79 miles from the Charleston, West Virginia federal courthouse and approximately 94 miles from the Columbus, Ohio federal courthouse where this matter is pending. (Zywicki Decl. ¶ 8.) Mr. Bryan, who retired in 1994, lives in Gallipolis, Ohio (USW Compl. ¶ 12), which is approximately 68 miles from the Charleston, West Virginia federal courthouse and 103 miles from the Columbus, Ohio federal courthouse. (Zywicki Decl. ¶ 7.)

Similar to CAWV's suit, the USW suit advances two claims, one claiming that the announced modification to benefits violates the parties' collective bargaining agreements and thus Section 301 of the LMRA and the other claiming that the announced modifications violate the relevant employee benefit plans, actionable under ERISA. (USW Compl. ¶¶ 32-37.)

---

[3] CAWV has made repeated attempts to serve Mr. Barker, however, Mr. Barker has been avoiding service.

## V. LOCATION AND ACCESSIBILITY OF AVAILABLE EVIDENCE

Though at the earliest stage of this litigation, Defendants have already identified numerous individuals who likely have knowledge of the various topics that are potentially relevant to the issues in this lawsuit and thus would likely be involved if the matter were allowed to proceed. The vast majority of these individuals live in West Virginia, and closer to Charleston, West Virginia than Columbus, Ohio.

- Timothy McNabb, current Human Resources Manager at the Ravenswood plant since 2003, has knowledge of the collective bargaining agreements between CAWV and/or its predecessors and the USW during the relevant time period, as well as the bargaining negotiations between the parties. Mr. McNabb also has knowledge of CAWV's retiree medical benefit plans and the administration of and historical changes to those plans. (McNabb Decl. ¶¶ 8-9.) Mr. McNabb was first hired by CAWV and/or its predecessors in 1992 in labor relations and held that position until 1999. In 2000, he was rehired into the Ravenswood plant's purchasing operation and held that position until joining Human Resources in 2003. Mr. McNabb resides in Murraysville, West Virginia. (*Id.* ¶¶ 1, 4-6.)

- Ms. Rosita H. Bauer was a Benefits Specialist at the Ravenswood plant from approximately 2000 through April 2009. In her capacity as a benefits specialist, Ms. Bauer was responsible for all retiree benefits issues and was a contact for questions from Ravenswood retirees regarding their retiree medical benefits provided by CAWV and/or its predecessors. Based on her experience in this role, she likely has knowledge of the retiree medical benefit plans, including historical changes to and administration of those retiree medical benefit plans provided by CAWV and/or its predecessors. Ms. Bauer currently resides in Point Pleasant, WV. (*Id.* ¶ 15.)

- Mr. Leon Yoder was a benefits administrator at the Ravenswood plant prior to 1988 and through approximately the mid-1990s and likely has knowledge of the retiree medical benefit plans, including historical changes to and administration of those retiree medical benefit plans provided by CAWV and/or its predecessors. Mr. Yoder currently resides in Point Pleasant, WV. (*Id.*)

- Mr. Nick Nuzzo was a benefits administrator at the Ravenswood plant prior to 1988 and through approximately early 1993 and likely has knowledge of the retiree medical benefit plans, including historical changes and administration of those retiree medical benefit plans provided by CAWV and/or its predecessors. Mr. Nuzzo currently resides in Charleston, WV. (*Id.*)

- Mr. Ned McCray was a benefits administrator at the Ravenswood plant prior to 1988 and through approximately the mid-1990s and likely has knowledge of the retiree

medical benefit plans, including historical changes to and administration of those retiree medical benefit plans provided by CAWV and/or its predecessors. Upon information and belief, Mr. McCray currently resides in Parkersburg, WV. (*Id.*)

- Ms. Linda Reynolds was a benefits administrator at the Ravenswood plant prior to 1988 and through approximately the mid-1990s and likely has knowledge of the retiree medical benefit plans, including historical changes to and administration of those retiree medical benefit plans provided by CAWV and/or its predecessors. Ms. Reynolds currently resides in Millwood, WV. (*Id.*)

- Ms. Barb Casto was a benefits administrator at the Ravenswood plant prior to 1988 and through approximately 1999 and likely has knowledge of the retiree medical benefit plans, including historical changes to and administration of those retiree medical benefit plans provided by CAWV and/or its predecessors. Ms. Casto currently resides in Ripley, WV. (*Id.*)

- Mr. Don Mancini was an Human Resources Manager at the Ravenswood plant from approximately 1988 through approximately 1997 and likely has knowledge of CAWV's and/or its predecessors' collective bargaining agreements and negotiations history as well as the retiree medical benefit plans, including historical changes to and administration of those retiree medical benefit plans provided by CAWV and/or its predecessors. Upon information and belief, Mr. Mancini lives in West Virginia. (*Id.*)

- Mr. Robert Lamb was at the table during the 1994 labor negotiations in the Southern District of West Virginia and, from approximately 1999 through 2001, was a Human Resources Manager at the Ravenswood plant and likely has knowledge of CAWV's and/or its predecessors' collective bargaining agreements and negotiations history as well as the retiree medical benefit plans, including historical changes to and administration of those retiree medical benefit plans provided by CAWV and/or its predecessors. Mr. Lamb lives in Parkersburg, WV. (*Id.*)

- Mr. Jim Bradley, former fabrication manager at the Ravenswood plant, was present at the bargaining table during both the 1992 and 1999 labor negotiations in the Southern District of West Virginia and likely has knowledge of one or more of the collective bargaining agreements between USW and CAWV or its predecessors and the parties' bargaining history. Mr. Bradley resides in Ravenswood, WV. (*Id.*)

- Mr. Don Hamon, former reduction manager at the Ravenswood plant, was present at the bargaining table during both the 1992 and 1994 labor negotiations in the Southern District of West Virginia and likely has knowledge of one or more of the collective bargaining agreements between USW and CAWV or its predecessors and the parties' bargaining history. Mr. Hamon resides in Teays Valley, WV. (*Id.*)

- Mr. Gordon Hopper, current plant manager of the curtailed operations at the Ravenswood plant, was present at the bargaining table during both the 1992 and 1999 labor negotiations in the Southern District of West Virginia and likely has knowledge

of one or more of the collective bargaining agreements between USW and CAWV or its predecessors and the parties' bargaining history. Mr. Hopper resides in Ravenswood, WV. (*Id.*)

- Mr. Ken Mikes, who has worked in labor relations, employee relations, and fabrication, all at the Ravenswood plant, was present at the bargaining table during both the 1992 and 1994 labor negotiations in the Southern District of West Virginia and likely has knowledge of one or more of the collective bargaining agreements between USW and CAWV or its predecessors and the parties' bargaining history. Mr. Mikes resides in Parkersburg, WV. (*Id.*)

- Mr. Todd Ritchie, fabrication production manager at the Ravenswood plant, was present at the bargaining table during the 1994 labor negotiations in the Southern District of West Virginia and likely has knowledge of one or more of the collective bargaining agreements between USW and CAWV or its predecessors and the parties' bargaining history. Mr. Ritchie resides in Ravenswood, WV. (*Id.*)

- Mr. Al Toothman was hired at the Ravenswood plant in approximately 1975 and moved into Human Resources in approximately 1977, where he stayed until his retirement in approximately 2002. Mr. Toothman likely has knowledge of the retiree medical benefit plans, including historical changes to and administration of those retiree benefit plans provided by CAWV and/or its predecessors. Further, Mr. Toothman was involved in the 1988, 1992, 1994, and 1999 labor negotiations in the Southern District of West Virginia, and therefore likely has knowledge of one or more of the collective bargaining agreements between USW and CAWV or its predecessors and the parties' bargaining history. Mr. Toothman lives in Ravenswood, WV. (*Id.*)

- Mr. L.D. Whitman, former fabrication plant manager, was present at the bargaining table for the 1988 labor negotiations in the Southern District of West Virginia and likely has knowledge of one or more of the collective bargaining agreements between USW and CAWV or its predecessors and the parties' bargaining history. Mr. Whitman lives in Ravenswood, WV. (*Id.*)

- Mr. Dewey Taylor was a member of the Union negotiating team and present at the bargaining table for the 1988, 1992, and 1994 labor negotiations in the Southern District of West Virginia and likely has knowledge of one or more of the collective bargaining agreements between USW and CAWV or its predecessors and the parties' bargaining history. Mr. Taylor lives in West Virginia. (*Id.*)

- Mr. Jim Picarella was a member of the Union negotiating team and present at the bargaining table for the 1994 labor negotiations in the Southern District of West Virginia and likely has knowledge of one or more of the collective bargaining agreements between USW and CAWV or its predecessors and the parties' bargaining history. Mr. Picarella lives in West Virginia. (*Id.*)

- Mr. Dave Alexander was a member of the Union negotiating team and present at the bargaining table for the 1994 labor negotiations in the Southern District of West Virginia and likely has knowledge of one or more of the collective bargaining agreements between USW and CAWV or its predecessors and the parties' bargaining history. Mr. Alexander lives in West Virginia. (*Id.*)

- Mr. Eli Morris was a member of the Union negotiating team and present at the bargaining table for the 1994 and 1999 labor negotiations in the Southern District of West Virginia and likely has knowledge of one or more of the collective bargaining agreements between USW and CAWV or its predecessors and the parties' bargaining history. Mr. Morris lives in West Virginia. (*Id.*)

- Mr. Dave Patrick was a member of the Union negotiating team and present at the bargaining table for the 1999 labor negotiations in the Southern District of West Virginia and likely has knowledge of one or more of the collective bargaining agreements between USW and CAWV or its predecessors and the parties' bargaining history. Mr. Patrick lives in West Virginia. (*Id.*)

Further, Defendant CAWV maintains the vast majority of the documents and records relevant to this litigation at CAWV's Ravenswood, West Virginia plant. (McNabb Decl. ¶¶ 8-9.) These include, but are not limited to, historical collective bargaining agreements, amendments, side letters, negotiation minutes, historical plan documents (*i.e.*, summary plan descriptions and summaries), certain retiree communications, employee files of CAWV Retirees, and other documents related to the litigation. (*Id.*) As importantly, *none* of Defendants' records or files are maintained in the Southern District of Ohio.

## ARGUMENT

CAWV commenced litigation of this dispute in the one and only logical forum – the Southern District of West Virginia – where the Ravenswood plant, the only plant affected by the benefit changes, is located, where the benefits at issue were negotiated and historically administered on a day-to-day basis, and where over 80% of the retirees, and the vast majority of the witnesses and relevant documents are located. In response,

in an effort to avail itself of the perceived more favorable Sixth Circuit law on retiree medical benefit disputes, the USW filed its own Complaint in a forum which has virtually no connection to the dispute. Such blatant forum shopping should not be permitted.

Defendants' respectfully request that the Court either dismiss or transfer the action under the principles of comity underlying the "first-to-file rule." In the alternative, Defendants' respectfully submit that the proper venue for this action based on the convenience of the parties, the convenience of the witnesses, and the interests of justice is the Southern District of West Virginia, and that the Court should transfer the USW suit to that District under 28 U.S.C. § 1404(a).

## I. UNDER THE FIRST-TO-FILE RULE, THIS COURT SHOULD DISMISS OR TRANSFER THE USW'S SUIT SO THAT CAWV'S SUIT MAY PROCEED TO JUDGMENT

### A. Under the First-to-File Rule, CAWV'S Suit Is the One that Should Proceed to Judgment

Courts in this circuit follow the "first-to-file rule," which provides that "when two actions involving parties and issues that substantially overlap have been filed in two different district courts, "'the court in which the first suit was filed should generally proceed to judgment.'"" *BSI Indus.* 2009 WL 349143, at *2 (S.D. Ohio Feb. 6, 2009) (quoting *Zide Sport Shop*, 16 F. App'x at 437 (quoting *In re Burley*, 738 F.2d 981, 988 (9th Cir. 1984))). The first-to-file rule requires courts to consider three factors, all of which strongly support dismissing or transferring the instant action in favor of the CAWV suit: "(1) the chronology of the actions; (2) the similarity of the parties involved; and (3) the similarity of the issues in each case." *See, e.g., AluChem, Inc. v. Sherwin Alumina L.P.*, No. C-1-06-263, 2006 WL 1281887, at *1 (S.D. Ohio May 10, 2006)

(internal quotation marks omitted); *Strategic Ambulance, Inc. v. Martinez*, No. 1:05-cv-598, 2006 WL 462430, at *2 (S.D. Ohio Feb. 24, 2006).

### **Chronology of the Actions.**

CAWV filed its suit in the Southern District of West Virginia on November 2, 2009, 11 days before the USW filed its suit in this Court. By the standards of first-to-file cases, this is a significant difference. Other courts have followed the rule and ordered transfers in cases in which one filing preceded the other by as little as six hours. *See Plating Res. Inc. v. UTI Corp.*, 47 F. Supp. 2d 899, 902, 905-06 (N.D. Ohio 1999) (transferring second-filed case to district in which one party had filed suit six hours earlier); *see also, e.g., NCR Corp. v. First Fin. Computer Servs. Inc.*, 492 F. Supp. 2d 864, 865-66, 868-69 (S.D. Ohio 2007) (transferring second-filed case to district in which one party had filed suit four days earlier); *Abbott Labs., Inc. v. Mead Johnson & Co.*, No. C2-98-0157, 1998 U.S. Dist. LEXIS 12317, at *3, *18-19 (S.D. Ohio Apr. 21, 1998) (four days); *Am. Modern Home Ins. v. Insured Accounts Co.*, 704 F. Supp. 128, 129, 131 (S.D. Ohio 1988) (three days). Accordingly, CAWV's suit is the first-filed suit.

### **Similarity of the Parties.**

The first-to-file rule requires only "substantia[l]" identity of parties. *Healthcare Capital, LLC v. Healthmed, Inc.*, 213 F. Supp. 2d 850, 856 (S.D. Ohio 2002). "A precise identity of parties . . . is simply not required." *Abbott Labs.*, 1998 U.S. Dist. LEXIS 12317, at *10; *see also Silver Knight Sales & Mktg.*, 2006 WL 3230770 at *1, 5 (S.D. Ohio 2006) (Holschuh, J.) (affirming application of first-to-file rule where magistrate judge found that related litigation involved "substantially the same parties and purpose"). In both the CAWV suit and the USW suit, the parties are substantially similar. On one

side are the USW and the class of over 400 individuals, and on the other side is CAWV and parties allegedly responsible for the October 19, 2009 decision regarding modification of benefits.

The few differences between the two sets of parties are insignificant. The two complaints name different class representatives for the retirees—CAWV has named representatives from West Virginia, (*see* CAWV Compl. ¶¶ 5-8), and the USW has named representatives from Ohio (*see* USW Compl. ¶¶ 11-12)—but both suits implicate precisely the same group of over 400 retirees, spouses, and dependents. (*Compare* CAWV Compl. ¶¶ 23-32 (identifying class consisting of approximately 437 retirees, dependents, and spouses entitled to benefits under collective bargaining agreements negotiated by USW and CAWV or its predecessors) *with* USW Compl. ¶¶ 22-28 (same)). The identity of the particular class representatives is not significant, because the representatives in each suit are unnamed class members in the other and will be bound by the judgment whether they serve in a representative capacity or not.

The USW has named additional parties not named in CAWV's complaint—CAC, the Wrap Plan, and 20 unidentified "John Does" who allegedly bear some responsibility for the decision to modify retiree benefits, (*see* USW Compl. ¶ 9)—but the presence of these additional parties does nothing to prevent application of the first-to-file rule. *See H & S Tool, Inc. v. Austerman*, No. C-3-07-331, 2008 WL 420036, at *3 (S.D. Ohio Feb. 14, 2008) (noting that party added to second-filed complaint will not prevent application of the first-to-file rule if parties are similar or have substantial overlap); *Silver Knight Sales & Mktg.*, 2006 WL 3230770, at *5 (accord); *Abbott Labs.*, 1998 U.S. Dist. LEXIS 12317, at *10 (accord). Indeed, where the additional party added is the parent company

of a wholly-owned subsidiary that was a party to the first-filed action, there is "no meaningful difference" between the parties because their interests are "exactly the same." *Abbott Labs.*, 1998 U.S. Dist. LEXIS 12317, at *10; *see also H & S Tool, Inc.*, 2008 WL 420036, at *4 (noting that relationship between parent corporation and subsidiary is sufficient to establish privity under Sixth Circuit law, and is therefore sufficient to establish similarity of the parties).

To the extent that CAC, the Wrap Plan, or the unidentified John Does have any interest in this litigation—and it is not clear that they do—the interest is "exactly the same" as CAWV's interest: to clarify whether the benefits provided by CAWV, and allegedly provided by CAC and the Wrap Plan, may be modified as proposed. *See Abbott Labs.*, 1998 U.S. Dist. LEXIS 12317, at *10. And to the extent the USW does wish to assert claims against those parties, they have various procedural devices available to them for joining those parties to the suit now pending in the Southern District of West Virginia. *See, e.g.*, Fed. R. Civ. P. 19, 20.

### Similarity of the Issues.

Finally, the CAWV suit and the USW suit involve exactly the same facts and issues. (*Compare* USW Compl. ¶¶ 32-37 *with* CAWV Compl. ¶¶ 33-39.) Both concern the modification of retiree benefits announced on October 19, 2009. (*See* CAWV Compl. ¶ 15; USW Compl. ¶ 19.) Both implicate the same collective bargaining agreements and benefit plans negotiated between CAWV and its predecessors and the Union. (*See* CAWV Compl. ¶ 19; USW Compl. ¶ 15.) Both present two legal questions: whether CAWV's proposed modifications are permissible under LMRA and whether they are

permissible under ERISA. (*See* CAWV Compl. ¶¶ 33-39; USW Compl. ¶¶ 32-37.) In short, the issues in the two cases are not merely similar but identical.

Accordingly, this is a textbook case for applying the first-to-file rule and dismissing or transferring USW's later-filed action. The two suits involve substantially the same parties and exactly the same issues, but one—the CAWV suit in the Southern District of West Virginia—was filed earlier and is therefore presumptively the suit that should proceed to judgment. *See, e.g., BSI Indus.*, 2009 WL 349143, at *2-3.

## B. USW Cannot Prove Any Rare Or Extraordinary Circumstances Justifying Dispensing With The First-To-File Rule

Because CAWV first-filed its suit in the Southern District of West Virginia, that is the suit that should proceed to judgment. Despite the rule's generally applicability, courts may "dispense with the first-to-file rule where equity so demands," such as in "rare or extraordinary circumstances" suggesting bad faith, inequitable conduct, anticipatory suits, or forum shopping. *See Zide Sport Shop*, 16 F. App'x at 437. None of those circumstances are present here.

Because the rule has "deep roots" in respecting concurrent jurisdiction and judicial comity, *NCR Corp.*, 492 F. Supp. 2d at 866, 868, its "'importance "should not be disregarded lightly."'" *Strategic Ambulance,* 2006 WL 462430, at *2 (Beckwith, C.J.) (quoting *Plating Res.*, 47 F. Supp. at 903 (quoting *Church of Scientology v. U.S. Dep't of the Army*, 611 F.2d 738, 750 (9th Cir. 1979))). Moreover, the burden of proving such "rare or extraordinary" circumstances rests with the USW, and requires more than "merely assert[ing], without substance or evidence, that [CAWV] had ill motives or that it was seeking a more favorable forum." *Abbott Labs.*, 1998 U.S. Dist. LEXIS 12317 at *12-13; *Internet Transactions Solutions, Inc. v. Intel Corp.*, No. 2:06-CV-035, 2006 WL

1281654, at *7 (S.D. Ohio May 8, 2006) (Holschuh, J.) (noting evidence of misleading conduct or bad faith is a "critical" factor). Absent such evidence, courts are "reluctant to impute improper motive." *Principal Mfg. Corp. v. Espey & Assocs., Inc.*, No. 1:08cv393, 2009 WL 483801, at *4 (S.D. Ohio Feb. 25, 2009) (holding timing of complaint alone is insufficient basis for improper motive).

Here, as detailed *supra*, the overwhelming facts demonstrate that it is *the USW*, not CAWV, who chose its forum based solely on where the perceived most favorable law lies. In the face of these facts, the USW cannot come close to meeting its burden of showing "ill motives" on the part of CAWV. As made clear by CAWV's Complaint, it had an unimpeachable reason for filing suit: it wished to know definitively whether its proposed modifications to retiree benefits are permissible under the parties' contracts and ERISA. Employers routinely invoke Section 301 of the LMRA or ERISA in seeking declarations about their rights under collective bargaining agreements and/or benefit plans. *See, e.g., Textron Lycoming Reciprocating Engine Div., Avco Corp. v. UAW*, 523 U.S. 653, 657-58 (1998); *Am. Radiator & Standard Sanitary Corp. v. Local 7 of Int'l Bhd. of Operative Potters*, 358 F.2d 455 (6th Cir. 1966); *Rexam, Inc. v. United Steelworkers of Am.*, No. Civ. 03-2998, 2003 WL 22477858 (D. Minn. Oct. 30, 2003).

Specifically, after announcing modification, CAWV had conversations with the Union in which the Union made clear that it disputed CAWV's ability to implement its announced modifications, and intended to pursue legal action. Consistent with the purposes of the Declaratory Judgment Act, CAWV filed suit seeking a judicial declaration. And, as this Court has held on multiple occasions, CAWV was completely within its rights to do so. *See Zimmer Enters. v. Atlandia Imps., Inc.*, 478 F. Supp. 2d

983, 989 (S.D. Ohio 2007) (declaratory action filed for the purpose of protecting ability to market product is not an improper anticipatory action filed as a means of forum shopping); *Abbott Labs.*, 1998 U.S. Dist. LEXIS 12317, at *13 (first-filing alone "is not a basis for derogating the first-to-file rule" or proof that first-filing was accomplished "as a result of inequitable conduct"). Further, CAWV did not bring this suit to "*defeat* liability," but rather to *determine* liability—undoubtedly an issue of "real value" to all parties—regarding CAWV's planned modifications. *See AmSouth Bank v. Dale*, 386 F.3d 763, 788 (6th Cir. 2004) (noting that when parties file declaratory judgment actions only to forum shop to defeat liability the action has "no real value" other than controlling the forum choice).

Finally, as discussed *infra*, unlike the USW, CAWV did not shop for a forum where it believed the law was most favorable but instead filed suit in the only logical form – the Southern District of West Virginia – where the plant at issue is located, where the contracts at issue were negotiated and signed, where the benefits at issue were negotiated, where the vast majority of documents and witnesses are located, and, compellingly, where over 80% of the class of CAWV Retirees reside. As the court observed in *AmSouth Bank*, whether a forum chosen by the declaratory plaintiff is "better or worse is irrelevant," however the fact that the chosen forum is "logical" is at least minimally relevant, *see* 386 F.3d at 789, and can be evidence of a permissible motivating factor for filing. *See H & S Tool,* 2008 WL 420036, at *3 n.1 ("Forum shopping refers to the selection of a forum based on the favorableness of the forum's substantive law *and not merely based upon considerations of convenience.*") (emphasis added); *UAW v. Dana Corp.*, No. 3:99cv7603, 1999 WL 33237054, at *4-5 (N.D. Ohio Dec. 6, 1999)

(distinguishing between permissible forum selection and improper forum shopping and determining the latter occurred, in part because the chosen forum was inconvenient for the filing party). CAWV's selection of the Southern District of West Virginia, for all of the convenience rationales discussed *infra*, shows that CAWV selected the logical forum, rather than filing an anticipatory suit to foreclose potential litigation elsewhere. Indeed, in light of the fact that no CBAs or plan documents were negotiated, administered, or even arguably breached in this District; that neither CAC nor CAWV has any facilities in this District; that only a slim percentage of retirees live in this District and of those who do, the vast majority live closer to the federal courthouse in Charleston, West Virginia than to the federal courthouse in Columbus, Ohio; and that this District otherwise has hardly any connection to this litigation, the evidence of forum shopping points to the USW, rather than CAWV.

Absent such impermissible motive or forum shopping by CAWV, numerous courts both in this District and across the Circuit have frequently applied the first-to-file rule in favor of first-filed declaratory judgment actions. *See, e.g., Barber-Greene Co. v. Blaw-Knox Co.*, 239 F.2d 774 (6th Cir. 1957) (affirming order of district court in first-filed declaratory judgment action enjoining proceedings in later-filed action); *NCR Corp. v. First Fin. Computer Servs.*, 492 F. Supp. 2d 864, 865 (S.D. Ohio 2007) (granting transfer based on comity to district where first-filed action was amended to include declaratory judgment action by party who won the "proverbial 'race to the courthouse'"); *AluChem, Inc. v. Sherwin Alumina L.P.*, No. C-1-06-263, 2006 WL 1281887, at *1 (S.D. Ohio May 10, 2006) (granting motion to transfer because it is "clear that the first-to-file rule applies here" where the first-filed action was a declaratory judgment action); *FMP*

*Resistance Welding Supply, Inc. v. Cobasys, LLC*, No. C-1-05-275, 2006 WL 1209383, at

*1 (S.D. Ohio May 2, 2006) (deferring to jurisdiction of court where declaratory

judgment action was first-filed); *Abbott Labs.*, 1998 U.S. Dist. LEXIS 12317; *Mead*

*Corp. v. Stuart Hall Co.*, 679 F. Supp. 1446, 1449-51 (S.D. Ohio 1987); *Plantronics, Inc.*

*v. Clarity, LLC*, No. 1:02-CV-126, 2002 WL 32059746 (E.D. Tenn. July 17, 2002);

*Plating Res., Inc.*, 47 F. Supp. 2d at 899. Accordingly, the Court should dismiss the case

or, in the alternative, transfer the case to the Southern District of West Virginia.

## II.     THE COURT SHOULD TRANSFER VENUE TO THE SOUTHERN DISTRICT OF WEST VIRGINIA UNDER 28 U.S.C. § 1404(a).

Regardless of the outcome of the first-to-file analysis, this action could have been

brought in the Southern District of West Virginia, Charleston Division, and the

convenience of the parties and witnesses and the interests of justice overwhelmingly

demonstrate that that District is a more appropriate forum for this case than the Southern

District of Ohio. For these reasons, this Court should transfer this action to the Southern

District of West Virginia, Charleston Division pursuant to 28 U.S.C. § 1404(a).

Title 28 U.S.C. § 1404(a) permits a transfer of venue based upon convenience:

> For the convenience of parties and witnesses, in the interest
> of justice, a district court may transfer any civil action to
> any other district or division where it might have been
> brought.

Under this provision, a request for transfer is evaluated under a two-part analysis. First,

the district or division where the moving party seeks to transfer the case must be one

where the case could have been brought, *i.e.*, another district or division where venue is

proper. *See, e.g., AmerisourceBergen Drug Corp. v. Meijer, Inc.*, No. 2:05-CV-0199,

2005 WL 1630843, at *3 (S.D. Ohio July 8, 2005) (Holschuh, J.) ("The first question is

whether [the proposed transferee jurisdiction] is a division where the action might

originally have been brought."); *Bordiga*, 159 F.R.D. at 461 (same). Second, the

alternative district or division requested by the moving party must better serve "'the

convenience of [the] parties and witnesses, public interest factors of systemic integrity,

and private concerns falling under the heading of interest of justice.'"

*AmerisourceBergen Drug Corp.*, 2005 WL 1630843, at * 3 (quoting *Kerobo v. Sw. Clean*

*Fuels, Corp.*, 285 F.3d 531, 537-38 (6th Cir. 2002)); *see also Bordiga*, 159 F.R.D. at 462

(noting that a "core determination under § 1404(a) is the center of gravity of the

litigation") (citation and internal quotation marks omitted).

### A.    The Southern District of West Virginia, Charleston Division Is A Proper Venue For This Action

LMRA and ERISA contain specific venue provisions that detail where actions

under those statutes may be brought. For its part, Section 301 of LMRA provides that

"[s]uits for violation of contracts between an employer and a labor organization" may be

brought "in any district court . . . having jurisdiction of the parties, without respect to the

amount in controversy or without regard to the citizenship of the parties." 29 U.S.C.

§ 185(a) (providing that Section 301 actions may be brought "in any district court . . .

having jurisdiction of the parties"); *see also Central States, S.E. & S.W. Areas Health &*

*Welfare Fund v. Guar. Trust Life Ins. Co.*, 8 F. Supp. 2d 1008, 1010 (N.D. Ohio 1998).

Of course, a district court has jurisdiction over a party that has "minimum contacts" with

the jurisdiction, *see, e.g.*, *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), and

Section 301 only expands upon that general rule. *See Moore v. Rohm & Haas Co.*, 446

F.3d 643, 646 (6th Cir. 2006) (noting that "if anything, the basic purpose of § 301(a) was

not to limit, but to expand, the availability of forums for the enforcement of contracts

made by labor organizations.") (citation and internal quotation marks omitted).

ERISA, in turn, provides that venue of an action is proper (1) in the district where the plan at issue is administered; (2) in the district where a breach took place; or (3) in the district where a defendant resides or may be found. *See* 29 U.S.C. § 1132(e)(2). As to the latter prong of this test, a defendant "'resides or may be found' . . . in any district in which its 'minimum contacts' would support the exercise of personal jurisdiction." *Moore*, 446 F.3d at 646 (citation omitted).

Under LMRA's and ERISA's venue provisions, this civil action might have been brought in the Southern District of West Virginia. Specifically, pursuant to § 185(a), the Southern District of West Virginia has jurisdiction over all Defendants. Defendant CAC has minimum contacts with the Southern District of West Virginia through its subsidiary CAWV, which operates the Ravenswood plant. Defendant CAWV clearly has minimum contacts with the Southern District of West Virginia as it operates a plant in that jurisdiction. Further, the Defendant Wrap Plan, through which retiree benefits were allegedly administered to CAWV Retirees, also has minimum contacts with the Southern District of West Virginia. Further, pursuant to ERISA, in addition to the minimum contacts, the alleged breach occurred in the Southern District of West Virginia when CAWV announced its intention to modify collective bargaining agreements and plans negotiated in the Southern District of West Virginia. Therefore, pursuant to LMRA and ERISA, the Southern District of West Virginia is an appropriate venue for this action.

**B.     The Southern District of West Virginia, Charleston Division Is The Most Convenient and Just Forum**

Once a district court assessing a motion to transfer has determined that the action could have been brought in the alternative forum, the court considers a number of factors relating to both the private interests of the parties and the interests of the public. The

court conducts its analysis on an "individualized, case-by-case" basis. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (citation and internal quotation marks omitted); *AmerisourceBergen Drug Corp.*, 2005 WL 1630843, at *3. Factors that generally weigh heavily in the court's analysis include: (1) the convenience of the parties; (2) the convenience of the witnesses; (3) the relative access to sources of proof; and (4) the interests of justice. *See, e.g., Sky Tech. Partners, LLC v. Midwest Research Inst.*, 125 F. Supp. 2d 286, 291 (S.D. Ohio 2000) (Holschuh, J.); *Zimmer Enters.*, 478 F. Supp. 2d at 990 (similar); *Burns, Morris & Stewart Ltd. P'ship. v. Menard, Inc.*, No. 3:05CV7112, 2006 WL 456497, at *1 (N.D. Ohio Feb. 23, 2006); *Checuti v. Conrail*, 291 F. Supp. 2d 664, 672 (N.D. Ohio 2003); *Central States*, 8 F. Supp. 2d at 1011.

In addition, a plaintiffs' choice of forum is sometimes a factor for the courts; but little, if any, deference is given to the plaintiffs' selection where any one of the following is present: (1) the controversy has minimal ties to the forum; (2) the plaintiff brings the case on behalf of a putative nationwide class of individuals; or (3) the plaintiffs do not reside in the forum. *See, e.g., Sky Tech. Partners, LLC*, 125 F. Supp. 2d at 298 (transferring action where, among other things, most of the events giving rise to plaintiff's claims occurred in the transferee jurisdiction); *Neff Athletic Lettering Co. v. Walters*, 524 F. Supp. 268, 272-73 (S.D. Ohio 1981) (noting that courts discount plaintiff's choice of forum where virtually all of the conduct complained of occurred outside of the forum selected by the plaintiff); *Kay v. Nat'l City Mortg. Co.*, 494 F. Supp. 2d 845, 850-51 (S.D. Ohio 2004) (plaintiff's choice of venue is given less consideration when plaintiff does not reside there); *Burns, Morris & Stewart Ltd. P'ship.*, 2006 WL 456497, at *2 (transferring litigation to its "center of gravity"); *see also Jones v.*

*Walgreen Co.*, 463 F. Supp. 2d 267, 274 (D. Conn. 2006); *Laborers Local 100 & 397 Pension Fund v. Bausch & Lomb Inc.*, No. 06 Civ. 19422006 WL 1524590, at *5 (S.D.N.Y. June 5, 2006).

### 1.    The Southern District of West Virginia, Charleston Division Is The Most Convenient Forum For The Parties

The Southern District of West Virginia is clearly the most convenient forum for the parties in this case. *See Midwest Motor Supply Co.*, 761 F. Supp. at 1319 (considering the "convenience of the parties" and finding that the inconvenience to the defendant caused by litigating in Ohio outweighed any inconvenience to plaintiff arising from the transfer).

Specifically, the Southern District of West Virginia is far more convenient for the Defendants than the Southern District of Ohio. As set forth more fully below, nearly all of the key witnesses are located in West Virginia. Specifically, witnesses who will speak to, among other things, the collective bargaining agreements between CAWV and/or its predecessors and the Union, the bargaining history and past practices among the parties, the retiree medical benefits that CAWV has offered through the years, and the various changes to these benefits between the parties overwhelmingly reside in or around the Southern District of West Virginia. (*See generally* McNabb Decl. ¶ 15.) These witnesses will provide information that is critical to the analysis of Plaintiffs' claims and Defendants' defenses to those claims.

As to Plaintiffs, the Southern District of West Virginia is a more convenient forum than the Southern District of Ohio. In this respect, over 80% of CAWV Retirees live in West Virginia. (Zwyicki Decl. ¶ 4;) *see Laborers Local 100 & 397 Pension Fund*, 2006 WL 1524590, at *5 (transferring venue, noting that "[s]ince few of the name

plaintiffs live in the SDNY, it really does not matter to them whether its [sic] tried here").
Further, even Plaintiffs' counsel and the USW seemingly recognize that the Southern
District of West Virginia is more convenient for the CAWV Retirees, having chosen to
hold an information meeting regarding the litigation in that District, rather than in the
Southern District of Ohio. *See* Natalee Seely, *Century Aluminum retirees, attorneys
meet*, Parkersburg News & Sentinel, Nov. 20, 2009, *available at*
http://newsandsentinel.com/page/content.detail/id/523890.html?nav=5056, attached
hereto as Ex. 5.

     The Southern District of West Virginia is even more convenient for the *USW's*
two named retiree plaintiffs, who live significantly closer to the Charleston, West
Virginia courthouse than to the courthouse in Columbus, Ohio. (*See* Zywicki Decl. ¶¶ 7-
8.) Similarly, the Southern District of West Virginia is more convenient for the Plaintiff
USW. Given that the USW is located in Pittsburgh, Pennsylvania, it will be forced to
travel regardless of whether or not the action is transferred. *See Laborers Local 100 &
397 Pension Fund*, 2006 WL 1524590, at *5 (noting that plaintiffs "would have to travel
to the forum state anyway, and the difference between a flight to New York City as
compared to Rochester is hardly a cogent distinction"). Further, its representative
assigned to the Ravenswood plant is Randall T. Moore, Staff Representative, District 8,
who maintains his office in Mineral Wells, West Virginia. (McNabb Decl. ¶ 7.) And as
to USW's Local 5668, which is located in Ravenswood and is familiar with CAWV's
Ravenswood plant and the CAWV Retirees, the Southern District of West Virginia is far
more convenient than the Southern District of Ohio.

Accordingly, because all parties seem to recognize that the Southern District of West Virginia is the center of gravity, and more convenient for the Plaintiff class, transfer to that District is appropriate. *See Fox*, 1995 WL 307485, at *3 (finding that plaintiffs would not be inconvenienced by transfer where "some of the class representatives reside in the Eastern District of Wisconsin, and thus can attend all pretrial matters which take place there"); *see also Cescato v. Anthem, Inc.*, No. 1:05CV2004, 2005 WL 3487974, at *2 (N.D. Ohio Dec. 21, 2005) (granting transfer, noting that "[i]n fact, the federal courthouse in Indianapolis is substantially closer to Plaintiffs' residences than this courthouse").

## 2. The Southern District of West Virginia, Charleston Division Is Also The Most Convenient Forum For The Witnesses

The convenience of the witnesses is another key factor in determining whether to transfer a case pursuant to 28 U.S.C. § 1404(a). *See Midwest Motor Supply Co.*, 761 F. Supp. 1316 at 1319 ("The most compelling argument in favor of transfer is defendant's contention that most if not all material witnesses in this matter reside in Georgia and/or Tennessee. 'The convenience of witnesses is said to be a primary, if not the most important factor in passing on a motion to transfer under § 1404(A).'") (citing *Houk v. Kimberly-Clark Corp.*, 613 F. Supp. 923 (W.D. Mo. 1985)); *Zimmer Enters.*, 478 F. Supp. 2d at 992 (finding the convenience of non-employee witnesses strongly favored a transfer of venue); *Plaskolite, Inc.*, 2008 WL 5190049, at *8 (transferring venue and noting that "most, if not all non-party witnesses" were located in the transferee jurisdiction); *Fed. Trade Comm'n. v. Mazzoni & Son, Inc.*, No. 106-CV-2385, 2006 WL 3716808, at *3 (N.D. Ohio Dec. 14, 2006) ("The most important or prime factor in

deciding a motion to transfer is the convenience of the witnesses") (citation and internal quotation marks omitted).

In this case, the convenience of the witnesses points overwhelmingly to the Southern District of West Virginia as the appropriate forum for this lawsuit. Specifically, the majority of key potential witnesses reside in and around the Southern District of West Virginia. As set forth above, Plaintiffs allege that various collective bargaining agreements and benefit plans providing retirees with vested medical benefits were violated when CAWV announced its intention to modify and/or terminate retiree medical benefits. Accordingly, the following information will be relevant to the litigation of this lawsuit: (1) information relating to the historical collective bargaining agreements and benefit plans between CAWV and/or its predecessors and the Union; (2) information relating to the parties' bargaining history as to these agreements, such as testimony from witnesses involved in the negotiations; (3) information regarding retiree medical benefits that CAWV and/or its predecessors has offered through the years; and (4) information regarding administration of and changes to these benefits. *See, e.g., Yolton v. El Paso Tenn. Pipeline Co.*, 435 F.3d 571, 579 (6th Cir.), *cert. denied*, 549 U.S. 1019 (2006). Though only early in the litigation, as set forth fully *supra*, PP 10-13, CAWV has identified the following 21 key potential witnesses who likely have knowledge of these matters:

- Timothy McNabb, current Human Resources Manager at the Ravenswood plant.

- Ms. Rosita H. Bauer, Benefits Specialist at the Ravenswood plant from approximately 2000 through April 2009.

- Mr. Leon Yoder, benefits administrator at the Ravenswood plant prior to 1988 and through approximately the mid-1990s.

- Mr. Nick Nuzzo, benefits administrator at the Ravenswood plant prior to 1988 and through approximately 1993.

- Mr. Ned McCray, benefits administrator at the Ravenswood plant prior to 1988 and through approximately the mid-1990s.

- Ms. Linda Reynolds, benefits administrator at the Ravenswood plant prior to 1988 and through approximately the mid-1990s.

- Ms. Barb Casto, benefits administrator at the Ravenswood plant prior to 1988 and through approximately 1999.

- Mr. Don Mancini, Human Resources Manager at the Ravenswood plant from approximately 1988 through 1997.

- Mr. Robert Lamb, Human Resources Manager at the Ravenswood plant from approximately 1999 through 2001.

- Mr. Jim Bradley, former fabrication manager at the Ravenswood plant involved in 1992 and 1999 labor negotiations.

- Mr. Don Hamon, former reduction manager at the Ravenswood plant involved in the 1992 and 1994 labor negotiations.

- Mr. Gordon Hopper, current plant manager of the curtailed operations at the Ravenswood plant.

- Mr. Ken Mikes, who worked in labor relations, employee relations, and fabrication, all at the Ravenswood plant in the early 1990s.

- Mr. Todd Ritchie, former fabrication production manager at the Ravenswood plant involved in the 1994 labor negotiations.

- Mr. Al Toothman, who worked in Human Resources at the Ravenswood plant between the late 1970s and approximately 2002.

- Mr. L.D. Whitman, a former fabrication plant manager at the Ravenswood plant in the late 1980s.

- Mr. Dewey Taylor, a member of the Union negotiating team in the 1988, 1992, and 1994 labor negotiations.

- Mr. Jim Picarella, a member of the Union negotiating team in the 1994 labor negotiations.

- Mr. Dave Alexander, a member of the Union negotiating team in the 1994 labor negotiations.

- Mr. Eli Morris, a member of the Union negotiating team in the 1994 and 1999 labor negotiations.

- Mr. Dave Patrick, a member of the Union negotiating team in the 1999 labor negotiations.

All of these potential witnesses reside in West Virginia and are significantly closer to the federal courthouse in Charleston than Columbus.

Were this case kept in the Southern District of Ohio, these witnesses would be forced to incur significantly greater inconvenience due to lengthier travel to and from Columbus, Ohio. *See, e.g., Cardarelli v. Curb Records, Inc.*, No. 5:05CV2690, 2006 WL 782702, at *4 (N.D. Ohio Mar. 27, 2006) (granting transfer, noting the "costs to transport and house witnesses for trial"); *N. Am. Demolition Co. v. FMC Corp.*, No. 5:05CV0104, 2005 WL 1126747, at *2 (N.D. Ohio Apr. 28, 2005) (granting transfer, noting a lack of "any convenience to the parties and witnesses" in litigating the matter in Ohio); *Fox*, 1995 WL 307485, at *4 (granting transfer in Section 301/ERISA action, noting that "defendant would suffer increased expenses associated with the maintenance of the welfare benefit plan" at issue if key employees were forced to travel to an inconvenient forum for trial). These factors favor transfer of this action to the Southern District of West Virginia.

Similarly, the convenience of Plaintiffs' witnesses suggests that transfer to the Southern District of West Virginia is appropriate. In fact, it would be far more convenient for the vast majority of their class members, who already reside in West Virginia and are thus closer to Charleston. Further, it would even be more convenient for the vast majority of those few CAWV Retirees who are Ohio residents, as approximately

93% of them live closer to the Charleston, West Virginia courthouse than to the courthouse in Columbus, Ohio, and over 80% of them live more than 20 miles closer to the Charleston courthouse than to the Columbus courthouse. (*See* Zywicki Decl. ¶ 6.) Moreover, to the extent that some of Plaintiffs' witnesses may be throughout the country, they would be required to travel anyway. *See, e.g., Cardarelli*, 2006 WL 782702, at *4 (granting transfer, noting that "[t]he witnesses to be presented by Plaintiffs who reside outside the state of Ohio will be required to travel regardless of whether this action remains in this Court or if it is transferred . . . ."); *Baltimore v. Toyota Motor Credit Corp.*, No. 00 CV 8415, 2001 WL 637377, at *3 (S.D.N.Y. June 8, 2001) (granting transfer, noting that most of plaintiffs' witnesses "will have to travel regardless of the location of the litigation").

### 3. The Relevant Documents And Other Sources Of Proof Are Located In The Southern District Of West Virginia, Charleston Division

The location of relevant documents and other sources of proof further favors the transfer of this matter. *See, e.g., Neff Athletic Lettering Co.*, 524 F. Supp. at 274 (finding that the "practical problems associated with the movement of business records . . . coupled with the availability of the records in New Hampshire" weighed in favor or transfer; *Cardarelli*, 2006 WL 782702, at *3 (transferring case, finding persuasive "Defendant's argument that most all of the documentary evidence in this case is located in the Middle District of Tennessee"); *Harris v. Republic Airlines*, 699 F. Supp. 961, 963 (D.D.C. 1988) (transferring case, noting that the majority of documents at issue were assumed to be in defendants' headquarters in Minnesota). To be sure, the documentary evidence relating to Plaintiffs' claims is located in the Southern District of West Virginia at the Ravenswood plant. Such documents include historical collective bargaining

agreements, amendments, side letters, negotiation minutes, historical benefit plan documents (*i.e.*, summary plan descriptions and summaries), certain retiree communications, personnel files of the CAWV Retirees, and other relevant documents. (McNabb Decl. ¶¶ 8-9.)

### 4. The Interests Of Justice Favor Transfer To The Southern District Of West Virginia, Charleston Division

Yet another factor that weighs in favor of transferring this case to the Southern District of West Virginia is the interests of justice. *See Central States*, 8 F. Supp. 2d at 1011. In this regard, this Court and others have repeatedly recognized that controversies should be resolved in the locale where they arise. *See, e.g., Sky Tech. Partners, LLC*, 125 F. Supp. 2d at 298 (transferring action where, among other things, most of the events giving rise to plaintiff's claims occurred in the transferee jurisdiction); *Neff Athletic Lettering Co.*, 524 F. Supp. at 272-73 (transferring case to jurisdiction where virtually all of the conduct complained of occurred); *Kay*, 494 F. Supp. 2d at 852 (same); *Burns, Morris & Stewart Ltd. P'ship.*, 2006 WL 456497, at *1-2 (transferring action related to alleged trademark infringement action to its "center of gravity," noting that "the management decisions, the development of the catalogue [at issue], the distribution of the catalogue, the witnesses with regard to the alleged infringement" were located there); *Central States*, 8 F. Supp. 2d at 1012 (transferring ERISA litigation to Illinois since, among other things, the defendant was located and denied plan coverage in that forum).

In this case, Named Plaintiffs Dewhurst and Bryan form part of the approximately 16.7% of the CAWV Retirees who live in Ohio. (*See* Zywicki Decl. ¶ 4.) That, however, is where the state's connection with the case begins and ends. On the other hand, the plant where the modifications were announced is in West Virginia, the vast majority of

the CAWV Retirees whose benefits were modified both worked and still live in West Virginia, the majority of the potential witnesses live in West Virginia, the historical documents and evidence related to this litigation are nearly all in West Virginia, and nearly all documents relevant to this litigation were negotiated in West Virginia. *See* PP 10-13, *supra*; (Zywicki Decl. ¶ 4; McNabb Decl. ¶¶ 8-9.) In short, the clear center of gravity of this matter is the Southern District of West Virginia, and that is the location where this matter should be resolved. *See Burns, Morris & Stewart Ltd. P'ship.*, 2006 WL 456497, at *2; *Cescato*, 2005 WL 3487974, at *2; *Central States*, 8 F. Supp. 2d at 1012.

### 5.     Plaintiffs' Choice Of Forum Is Not Entitled To Deference

Finally, the Court should grant Defendants' Motion because the Plaintiffs' selection of the Southern District of Ohio is entitled to little, if any, deference. In this regard, the law is clear that when plaintiffs file an action in a forum in which they largely do not live, their selection is entitled to limited deference. *See, e.g.*, *Kay*, 494 F. Supp. 2d at 851; *Martin v. Caterpillar, Inc.*, No. 06-4208, 2006 WL 3923900, at *1-2 (W.D. Mo. Dec. 15, 2006); *Laborers Local 100 & 397 Pension Fund*, 2006 WL 1524590, at *5. Similarly, where the claim at issue has no particular connection to the chosen forum, that choice is entitled to little deference. *See, e.g.*, *Midwest Motor Supply Co.*, 761 F. Supp at 1320 (finding that any breach would have occurred in the transferee jurisdiction and thus pertinent witnesses as well as other issues expected to arise in the case also would be located there); *Sky Tech. Partner, LLC*, 125 F. Supp. 2d at 298; *Neff Athletic Lettering Co.*, 524 F. Supp. at 272-73; *Burns, Morris & Stewart Ltd. P'ship.*, 2006 WL 456497, at *2; *Cescato*, 2005 WL 3487974, at *2; *Central States*, 8 F. Supp. 2d at 1012; *Bordiga*, 159 F.R.D. at 462; *Ret. Plan of Unite Here Nat'l Ret. Fund v. Village Resorts, Inc.*, No.

08 Civ 4249, 2009 WL 255860, at *5 (S.D.N.Y. Feb. 3, 2009) (transferring ERISA action where Plaintiffs' choice of forum was the only factor weighing against the transfer). As detailed above, the Plaintiff USW has its headquarters in Pittsburgh, Pennsylvania and only a limited percentage of Plaintiff class members reside in Ohio. Moreover, this matter's center of gravity is in West Virginia. On this basis alone, the Plaintiffs' selection of the Southern District of Ohio should be discounted.

Equally significantly, however, courts hold that where a plaintiff brings a putative nationwide class action and there is ongoing related litigation in another district, then the chosen forum of the named plaintiffs is not especially important or entitled to deference. *See, e.g., City of Columbus v. Hotels.com, L.P.*, No. 2:06-cv-677, 2007 WL 2029036, at *4 (S.D. Ohio July 10, 2007) (Holschuh, J.) (granting motion to transfer and noting that plaintiffs' choice was entitled to less weight when they were part of a putative class in a similar action filed in another district; "the existence of ongoing litigation in the intended transferee district is *a powerful reason to grant a motion to transfer*") (citation and internal quotation marks omitted) (emphasis added); *Silver Knight Sales & Mktg.*, 2006 WL 3230770, at *4 (Holschuh, J.) ("the fact that a related action is pending in the proposed transferee district is an important consideration that can override plaintiff's choice of forum because transfer of the second action will promote judicial economy and avoid the possibility of inconsistent results.") (citation and internal quotation marks omitted).

Here, Plaintiffs bring this case as a class action on behalf of retirees, their dependents, and surviving spouses nationwide. (USW Compl. ¶ 22.) These putative class members do not predominately reside in Ohio – quite to the contrary, under 20% of

the CAWV Retirees reside in Ohio, as compared with over 80% in West Virginia. (Zywicki Decl. ¶ 4.) Clearly, then, given the *de minimis* connection that this action has to Ohio and the substantial nexus that this case has with the Southern District of West Virginia, Plaintiffs' choice of the Southern District of Ohio can be nothing other than forum shopping, providing yet another reason why this case should be transferred. *See, e.g., Cescato,* 2005 WL 3487974, at *4 (transferring litigation, finding that plaintiffs' selection of Ohio was an inappropriate "attempt to make an end run around an Indiana statute of limitations" and noting that "Section 1404(a) was intended in part to avoid forum shopping by plaintiffs") (citation and internal quotation marks omitted); *Central States,* 8 F. Supp. 2d at 1011 (transferring litigation notwithstanding plaintiffs' contention that it was "more advantageous for Plaintiffs to have this action determined by Sixth Circuit precedent"). And in light of the presence of an identical action covering the USW proposed class in the transferee district, coupled with all of the convenience arguments outlined above, there is "a powerful reason to grant a motion to transfer." *City of Columbus,* 2007 WL 2029036, at *4 (citation and internal quotation marks omitted).

## CONCLUSION

For the foregoing reasons, this Court should dismiss or transfer the action to the Southern District of West Virginia in favor of the CAWV action filed in that District on November 2, 2009, or transfer it to that District pursuant to 28 U.S.C. § 1404(a).

Dated:  December 4, 2009

Respectfully submitted,

s/E. Michael Rossman
E. Michael Rossman  (OH 0070168)
Trial Attorney
JONES DAY
Street Address:
  325 John H. McConnell Boulevard, Suite 600
  Columbus, OH  43215-2673
Mailing Address:
  P.O. Box 165017
  Columbus, OH  43216-5017
Telephone:  (614) 469-3939
Facsimile:  (614) 461-4198
E-mail:  emrossman@jonesday.com

Stanley Weiner (admission *pro hac vice* forthcoming)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH  44114-1190
Telephone:     (216) 586-7763
Facsimile:     (216) 579-0212
E-mail:  sweiner@jonesday.com

Sarah McClure (admission *pro hac vice* forthcoming)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C.  20001-2113
Telephone:     (202) 879-3811
Facsimile:     (202) 626-1700
E-mail:  sbmcclure@jonesday.com

Counsel for Defendants

WAI-2944071v5